*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





## OPINION

No. 04-11-00615-CR

Richard Anthony **BALDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 4, Bexar County, Texas
Trial Court No. 297746
Judge Sarah E. Garrahan, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  July 11, 2012

AFFIRMED

Richard Anthony Baldez appeals his conviction for driving while intoxicated.  We affirm

the judgment of the trial court.

### BACKGROUND

At 11:19 p.m. on July 25, 2009, Officer Eric Rubio stopped Baldez after noticing that

Baldez was driving on the freeway without his headlights on.  During the stop, Rubio observed

Baldez's bloodshot eyes, slurred speech, and the odor of intoxicants on his breath.  Baldez

admitted to Rubio that he had been drinking. Rubio then asked Baldez to perform three Standardized Field Sobriety tests—the horizontal gaze nystagmus test, walk-and-turn test, and the one-leg-stand test. Baldez exhibited signs of intoxication on each test. Thereafter, Rubio placed Baldez under arrest. Rubio transported Baldez to the magistrate's office and requested a breath specimen. Baldez agreed, and the intoxilyzer results were .165 at 12:06 a.m. and .170 at 12:09 a.m. Baldez was charged with driving while intoxicated.

At trial, Baldez attempted to question Rubio about his disciplinary history with the San Antonio Police Department (SAPD). Rubio admitted that he had been disciplined by the SAPD. The trial court, however, prohibited further questioning, stating that disciplinary proceedings are not public record and that Rubio could not be forced to testify regarding his disciplinary history. The next day, Baldez made a formal bill of exception and the trial court admitted a copy of the agreed suspension for purposes of appeal. The suspension indicates that Rubio was placed on unpaid leave for a period of 25 days in 2007. Baldez argued that the suspension went to the veracity and credibility of Officer Rubio.

At the conclusion of the trial, the jury found Baldez guilty of driving while intoxicated. The trial court assessed a punishment of 180 days in the Bexar County Jail, suspended and probated for a period of eight months, plus a $500 fine and court costs. Baldez now appeals, arguing the trial court erred in failing to allow him to impeach Rubio concerning his disciplinary suspension. He also contends the State violated his federal right to due process by failing to disclose exculpatory evidence, i.e., the disciplinary suspension. Baldez additionally argues that the trial court erred in denying his motion to suppress based on lack of reasonable suspicion to stop.

**DISCUSSION**

*Motion to Suppress*

We first address Baldez's contention that the trial court erred in denying his motion to suppress because his arrest was not supported by probable cause. We review a trial court's ruling on a motion to suppress under an abuse of discretion standard, giving almost total deference to the trial court's determination of historical facts and reviewing its application of the law de novo. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). Generally, a police officer's decision to stop a car is reasonable when the officer has probable cause to believe that a traffic violation has occurred. *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). With an objectively valid reason for a traffic stop, the constitutional reasonableness of the stop does not depend on the actual motivations of the officer. *See Whren*, 517 U.S. at 813.

The Texas Transportation Code provides that "[a] vehicle shall display each lighted lamp . . . required . . . to be on the vehicle . . . at nighttime." TEX. TRANSP. CODE ANN. § 547.302(a)(1) (West 2011). Officer Rubio testified that he stopped Baldez because he saw him drive his car without activating the headlights. The evidence showed that it was nighttime and Baldez drove his car on a street without its headlights illuminated. Any subjective motives of Officer Rubio for the stop are not relevant. *See Whren*, 517 U.S. at 813. Accordingly, the evidence supports the trial court's conclusion that Officer Rubio's detention of Baldez was reasonable. *See Walter*, 28 S.W.3d at 542; *see also Williams v. State*, No. 04-02-00747-CR, 2003 WL 21658529, at *1 (Tex. App.—San Antonio July 16, 2003, pet. ref'd) (not designated for publication, mem. op) (officer had right to stop and detain appellant for committing traffic offense of driving with only one headlight at night); *Laws v. State*, No. 01-09-00431-CR, 2010

WL 2133925, at *2 (Tex. App.—Houston [1st Dist.] May 27, 2010, no pet.) (not designated for publication, mem. op) (reasonable suspicion existed for officers to stop and detain appellant who drove without headlights illuminated at night). Because the trial court did not abuse its discretion in denying the motion to suppress, we overrule Rubio's second issue on appeal.

### *Excluded Evidence of Officer Rubio's Prior Disciplinary Proceeding*

Baldez maintains the trial court erred in failing to allow him to cross-examine Officer Rubio concerning his disciplinary suspension from the SAPD for violating department rules at a crime scene by taking evidence and concealing such fact, and the evidence, from his superiors. Baldez claims the excluded testimony indicates Rubio's lack of credibility.

The Sixth Amendment right of confrontation includes the right to cross-examine the State's witnesses. U.S. CONST. amend. VI; *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Through cross-examination, a defendant can test the believability of a witness and the truth of his testimony. *Davis v. Alaska*, 415 U.S. 308, 316 (1974). We review a trial court's decision to limit cross-examination under an abuse of discretion standard. *See Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). The trial court has "broad discretion to impose reasonable limits on cross examination to avoid, inter alia, harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 682 (1986). In evaluating whether a trial court erred in refusing to admit specific evidence under a Confrontation Clause claim, courts balance the probative value of the proffered evidence against the risk its admission may entail. *See Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).

The credibility of a witness may be attacked by opinion or reputation evidence, or by proof of a conviction for a felony or a crime of moral turpitude.  *See* TEX. R. EVID. 608(a); 609(a).  Aside from proof of a conviction for a felony or a crime of moral turpitude, a witness's general character for truthfulness may not be attacked by evidence of specific instances of conduct.  TEX. R. EVID. 608(b).  Specific instances of conduct may, however, be admissible for the purpose of attacking a witness's trustworthiness in a particular case because of bias or interest.  *See* TEX. R. EVID. 613(b).  The appellant has the burden of showing the relevance of particular evidence to the issue of bias or prejudice.  *Chambers v. State*, 866 S.W.2d 9, 26-27 (Tex. Crim. App. 1993).

Here, Baldez sought to introduce the disciplinary report for the sole purpose of showing Rubio's lack of credibility; Baldez never argued that Rubio was untrustworthy due to bias or interest against Baldez.  *See* TEX. R. EVID. 613(b).  Rule 608(b) expressly prohibits the introduction of specific instances of conduct to attack a witness's credibility.  TEX. R. EVID. 608(b).  "[A]s the Supreme Court noted in *Davis v. Alaska*, there is an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals 'possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities of the case at hand.'" *Hammer*, 296 S.W.3d at 562 (quoting Davis, 415 U.S. at 316).  The *Davis* court cautioned that the Sixth Amendment does not confer a right to impeach the *general* credibility of a witness through otherwise prohibited modes of cross-examination.  *Hammer*, 296 S.W.3d at 562 (emphasis original) (citing *Davis*, 415 U.S. at 321 (Stewart, J., concurring)).  Because Baldez sought to impeach Rubio's credibility with

proof of the disciplinary report, we conclude the trial court did not abuse its discretion in limiting cross-examination.[1] We overrule Baldez's first issue.

Baldez also argues that his right to due process was violated when the State failed to disclose Officer Rubio's disciplinary suspension. Under *Brady v. Maryland*, 373 U.S. 83 (1963), prosecutors have an affirmative duty to disclose all material exculpatory evidence to the defense.

We disagree that a *Brady* violation exists in this case. To establish a *Brady* violation, the defendant must show that (1) the State suppressed evidence, (2) the suppressed evidence favors the defendant, and (3) "there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different." *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Here, the record does not reflect that Rubio's disciplinary report was withheld from Baldez. Although Baldez contends he did not receive Rubio's records from the Commission of Law Enforcement Officer Standards and Education until the second day of trial, Baldez attempted to cross-examine Rubio concerning the report on the first day of trial, and then made a bill of exception during which the report was admitted for purposes of appeal on the second day of trial. Therefore, Baldez has not shown that the State suppressed the evidence. *See Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999) (*Brady* claim fails where evidence is turned over in time for defendant to use it in his defense); *see also Marchbanks v. State*, 341 S.W.3d 559, 563-64 (Tex. App.—Fort Worth 2011, no pet.) (no *Brady* violation where defendant became aware of withheld evidence during trial). In any event, as discussed above, evidence of Rubio's prior disciplinary proceeding was not admissible as impeachment evidence under Rule 608(b); thus, the prosecution had no duty to turn over the report. *Lagrone*, 942 S.W.2d at 615 ("[T]he prosecution has no duty to turn over evidence that would be inadmissible at trial.").

---

[1] Although the trial court expressly limited cross-examination on grounds that the disciplinary proceeding was not public record, we may affirm the trial court's ruling if it is correct on any theory of law applicable to the case. *See Calloway v. State*, 743 S.W.2d 645, 651-52 (Tex. Crim. App. 1988).

Even assuming the disciplinary report was admissible, Baldez has not shown that there is a reasonable probability the outcome of the trial would have been different. *See id.* This was not a case involving a "swearing match" between Baldez and Officer Rubio in which their versions of events varied. *See Lopez*, 18 S.W.3d at 225 (defendant had heightened need to impeach credibility of accuser where there was no corroborating evidence and trial amounted to a "swearing match" between the two). As previously discussed, Rubio had probable cause to stop Baldez for driving without illuminated headlights at night. Moreover, Rubio's testimony that Baldez appeared intoxicated based on his bloodshot eyes, slurred speech, and the odor of alcohol emanating from his breath was corroborated by the results of the intoxilyzer test showing that Baldez's blood alcohol concentration was more than twice the legal limit. Given the other uncontroverted evidence of his intoxication, Baldez cannot show how impeaching Rubio's character for truthfulness would have most likely produced a different outcome at trial. Because Baldez cannot demonstrate that he meets the three-pronged *Brady* test, we conclude Baldez has no basis on which to demand a new trial. *Hampton*, 86 S.W.3d at 612. Accordingly, we overrule Baldez's third issue.

### CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

Phylis J. Speedlin, Justice

PUBLISH