

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00444-CR

George Joshua **WASHINGTON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CR9797
Honorable Frank J. Castro, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:          Patricia O. Alvarez, Justice
                  Irene Rios, Justice
                  Lori I. Valenzuela, Justice

Delivered and Filed: April 30, 2024

AFFIRMED

Appellant George Joshua Washington appeals his conviction for aggravated promotion of prostitution. In his sole issue, Washington argues the trial court abused its discretion when it excluded evidence that one of the State's witnesses was a possible suspect of another crime. We affirm.

### BACKGROUND

Washington was indicted for the offenses of continuous trafficking of persons and aggravated promotion of prostitution. At trial, Washington sought to cross-examine one of the

complainants, Karen,[1] regarding a police report that noted her as a possible suspect in an aggravated assault that occurred over a year before Washington was indicted. The State objected arguing Karen was cleared of any wrongdoing, the testimony is not relevant to the charges brought against Washington, and the testimony elicited would be an inadmissible specific instance of conduct under Rule 608 of the Texas Rules of Evidence. Washington responded that the mere fact Karen was a suspect at one time for aggravated assault gives her a motive to lie for the State, seemingly arguing the testimony is admissible under Rule 613 of the Texas Rules of Evidence. The trial court sustained the State's objection. The jury ultimately found Washington guilty of aggravated promotion of prostitution but not guilty of the continuous trafficking charge. The trial court rendered a judgment of conviction for the offense of aggravated promotion of prostitution and assessed punishment at fifteen years' confinement and a $5,000.00 fine. Washington appeals.

## STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). Under this standard, the trial court's evidentiary ruling will be upheld as long as it is within the zone of reasonable disagreement. *Id.* "The trial court has 'broad discretion to impose reasonable limits on cross examination to avoid, inter alia, harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence.'" *Baldez v. State*, 386 S.W.3d 324, 327 (Tex. App.—San Antonio 2012, no pet.) (quoting *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997)). "If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed, even if the trial [court] gave the wrong reason for [its] correct ruling." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

---

[1] Karen is a pseudonym used in the trial court and on appeal to protect the identity of the witness.

## DISCUSSION

Washington argues he should have been allowed to present evidence of Karen's alleged past criminal acts to show that she had a motive to lie for the State, presumably to curry favor from the State. Washington complains the trial court excluded testimony he would have elicited from Karen on whether she was a suspect in an aggravated assault that did not result in charges. The State argues Washington failed to preserve error. Therefore, we first determine whether Washington preserved his appellate complaint.

### A. Preservation

To preserve error regarding a trial court's decision to exclude evidence, the complaining party must make an offer of proof to set forth the substance of the proffered evidence unless the substance is apparent from the context of the questions asked. *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009); TEX. R. EVID. 103(a)(2). "The offer of proof may consist of a concise statement by counsel, or it may be in question-and-answer form." *Mays*, 285 S.W.3d at 889. If counsel makes a concise statement, "the proffer must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible." *Id.* at 889–90 (internal quotation marks omitted). "The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful." *Id.* at 890. "A secondary purpose is to permit the trial [court an opportunity] to reconsider [its] ruling in light of the actual evidence." *Id.*

Here, at the State's suggestion, Washington's counsel took Karen on voir dire to ask her whether she was involved in the aggravated assault. The following exchange took place outside the presence of the jury:

| | |
|---|---|
| Defense Counsel: | In July of 2020, were you involved in a shooting where you shot an individual in the abdomen? |
| Karen: | No, never. |
| Defense Counsel: | That's all I'm going to ask, Judge. I plan to impeach that statement with a different witness. |
| Court: | When was it? |
| Defense Counsel: | July, 2020. |
| . . . . | |
| Court: | Okay. I am not going to allow that. Okay? And so make your objection on the record, but . . . I don't think that has anything— |
| Defense Counsel: | Sure |
| Court: | —to do with this case. |
| Defense Counsel: | I object because this individual is a suspect in a shooting case. It gives her a full motive to lie. |

Washington's counsel never called the investigating officers, but made the following offer

of proof in the form of a concise statement:

> In this case, we were denied the opportunity to go into a—a case involving Karen, who will be under SAPD Cause Number 20128167, where Karen is a suspect in a shooting case. The Defense would have solicited information from Officer Shawn Robinson, 0545, and supervisor Armando Reyes, 9991; but they were called out to a scene on July 8th, 2020, for a shooting. At that point, the officers would have testified that they have retrieved a video from the hotel security camera showing Karen going to her vehicle outside the listed location, walking back with a gun in her hand, knocking on the door with the gun, and after a brief verbal argument, Karen points the gun at [the victim] without firing. Karen is then walking away, and she intentionally lifts the gun towards the window with her right hand and recklessly fires one round through the glass, striking [the victim] in the abdomen. Karen then entered a vehicle and immediately fled the scene. Further information or testimony would have shown that this case is under further investigation and still pending.

The prosecutor responded:

> With—with regard to the claim that there was an active investigation into a[n] aggravated assault regarding [Karen] that remains active, it—on—from an incident that occurred July 8, 2020, is contrary to the information I have from San Antonio Police Department. The case was closed. No one was able to identify who the shooter was in that case. In fact, from the police reports, no one had any information from having watched the video who the person was. The follow-up

investigator had suspected, from talking to witnesses, that it was the baby mother of the purported victim . . . but she was not at the location. The only way that [Karen's] name came out was a witness told the police that she had rented the room. She was not at the location. She was not identified by anyone as the shooter, except reference was made that—in a police report of a person putting that in there who didn't even know [Karen] and had—had mistakenly put her name in the report as who that person was without having any witness that knew her identify her. So[,] we would have objected to the admission of this testimony because it was insufficient to show any role of—of Karen . . . as being involved in this crime at all and the—and the case was cleared PFI on August 2nd, 2020, well before the date of this trial where the charges [were brought] against George Washington.

Both Washington and the State proffered police reports from the aggravated assault incident as part of the offer of proof and response. We conclude Washington preserved his appellate complaint that the trial court prevented him from showing Karen's bias under Rule 613(b) of the Texas Rules of Procedure.[2]

## B. Error

We next address whether the trial court abused its discretion when it excluded evidence of the aggravated assault incident that, according to Washington, showed Karen's bias or motive to lie.

"The proponent of evidence to show bias [under Rule 613(b)] must show that the evidence is relevant." *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004). "The proponent does this by demonstrating that a nexus, or logical connection, exists between the witness's testimony

---

[2] Washington complained about the exclusion of Karen's testimony regarding the aggravated assault, and his offer of proof only addresses the purported evidence he would have elicited from the officers investigating the aggravated assault. However, we believe Washington's offer of proof was sufficient to apprise the trial court and this court of his complaint that he was denied the opportunity to explore Karen's potential bias to testify favorably for the State. *See Mays*, 285 S.W.3d at 890.

In one sentence in the concluding paragraph of his brief, Washington asserts for the first time that his Sixth Amendment rights—presumably under the Confrontation Clause—were violated. Washington failed to assert a constitutional argument in the trial court. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). Because Washington failed to make a constitutional argument during trial, he is precluded from raising the complaint on appeal. *See id.* 179–80; *see also Golliday v. State*, 560 S.W.3d 664, 671 (Tex. Crim. App. 2018) ("Appellant did not clearly articulate a constitutional basis supporting the admission of the excluded evidence at trial. Consequently, he did not preserve a constitutional claim for appeal."). To the extent Washington makes a constitutional complaint on appeal, we hold he has not preserved that issue for appeal.

and the witness's potential motive to testify in favor of the other party." *Id.* The Court of Criminal Appeals has found the required nexus "when a witness has been indicted or is serving a period of community supervision." *Id.* "In such cases, the witness is placed in a vulnerable position and may have a motive to testify in favor of the State." *Id.* However, "[i]t is not enough to say that all witnesses who may, coincidentally, be on probation, have pending charges, be in the country illegally, or have some other 'vulnerable status' are automatically subject to cross-examination with that status regardless of its lack of relevance to the testimony of that witness." *Irby v. State*, 327 S.W.3d 138, 152 (Tex. Crim. App. 2010).

Here, Karen was neither indicted nor was she serving a period of community supervision. The evidence in the offer of proof shows the aggravated assault case stalled because the victim would not cooperate with the investigators and the police could not identify the suspect from video footage of the crime scene.[3] One of the police reports proffered by the State in response to the offer of proof provides that a witness stated the motel room where the victim was shot was leased in Karen's name but that Karen had not been present at the motel that day. Because Karen was not charged—and there was not even a suggestion of her prosecution—the appearance of her name in a police report as an ostensible suspect was not logically connected to her testimony in the instant case. *See Irby*, 327 S.W.3d at 152 (internal quotation marks and alterations omitted) ("We therefore reject appellant's absolutist position that a probationer, particularly a probationer whose guilt has not yet been adjudicated, is always in a vulnerable relationship with the State and that mere status is always automatically relevant to show a witness's possible bias and motive to testify favorably for the State as inconsistent with Texas and United States Supreme Court precedent.").

---

[3] There was one statement that stated Karen was the assailant. However, the inclusion of Karen's name in the police report is inconsistent with other statements in the police report that the investigating officers were unable to identify the shooter.

Moreover, Washington did not ask Karen whether she expected favorable treatment from the State on potential charges in exchange for her testimony. *See Woods*, 152 S.W.3d at 112. The trial court stated it would give defense counsel leeway to call the officers who investigated the aggravated assault and would not "deny [the defense] exploration" of whether there is an arrangement for favorable treatment between Karen and the State. The record reflects the trial court would allow the defense to call the officers that investigated the aggravated assault to explore whether the case was still pending or if the prosecutors asserted any influence on the officers' decision to close the case. Washington did not call the investigating officers to testify. Absent additional facts of some potential agreement between Karen and the State, there is no nexus between the aggravated assault incident—in which the State elected not to prosecute anyone before Washington was even indicted in the instant case—and Karen's purported possible motive to curry favor with the State. *See Irby*, 327 S.W.3d at 149 (reciting precedent that pending federal charges were irrelevant as a possible source of bias "absent additional facts of some potential 'deal' between state and federal authorities [because] there was no logical connection between the federal pending charges and the witness's motive to 'curry favor' with state authorities"). Therefore, we hold the trial court did not abuse its discretion when it excluded testimony regarding Karen's alleged involvement in the aggravated assault incident.

Accordingly, Washington's sole issue is overruled.

## CONCLUSION

We affirm the trial court's judgment.

Irene Rios, Justice

Do not publish